[Civ. No. 51398. Second Dist., Div. Five. Nov. 15, 1977.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
WILLIAM JAMES ROBINSON, Real Party in Interest.

## COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Maurice H. Oppenheim, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Wilbur F. Littlefield, Public Defender, Harold R. Shabo, Dennis A. Fischer, Michael M. Crain and H. Reed Webb, Deputy Public Defenders, for Real Party in Interest.

## OPINION

STEPHENS, J.— Petitioner herein seeks a writ of mandate directing respondent to vacate its order granting real party in interest's motion to suppress evidence. The facts are these: Real party in interest was charged with violations of sections 11351 and 11378 of the Health and Safety Code. He noticed a motion to suppress evidence pursuant to section 1538.5 of the Penal Code. We have not been informed by the parties of the grounds for that motion. During the course of the hearing on the motion to suppress, the trial judge noticed that the issuing magistrate had not signed the warrant which formed the basis for the search. Apparently no one else associated with the case had noticed this previously. The hearing was continued to enable petitioner to adduce evidence on this issue.

When the hearing resumed the magistrate was called as a witness. She testified that it was her practice, upon being presented with an affidavit seeking a search warrant, to read the affidavit to determine if there was probable cause to issue a warrant. If she concluded that probable cause did exist she would swear the affiant, witness his signing of the affidavit under oath, sign the affidavit herself and then sign the warrant. If, on the other hand, she determined that the contents of the affidavit did not present probable cause, she would return the affidavit to the affiant without signing it or the warrant.

In the instant matter the affiant officer brought the documents to the magistrate's home. She determined that probable cause did exist. She swore the affiant and had him sign the affidavit. She then signed it below his signature. At the time she signed the affidavit it was her intention that the warrant be issued. She failed to sign the warrant, however, through inadvertence.

The affiant, Deputy Carter, testified that he presented the affidavit to the magistrate and that it was his recollection that she signed several copies of the affidavit and of the warrant. Thereafter Carter executed the warrant by showing the original thereof to real party, giving him a Xerox copy of the warrant and searching the subject premises. At the time Carter executed the warrant he believed it to be legally sufficient. Real party did not comment about the lack of a judge's signature on the warrant at the time it was served on him.

Carter was not aware before he testified that the original of the warrant had not been signed. He was still of the opinion at that time that

signed copies of the original did exist. The hearing was again recessed to enable Carter to check his files for a signed copy of the warrant. This search proved unfruitful and when the hearing resumed the parties stipulated that all existing copies of the warrant are unsigned.

Respondent found that the magistrate had reviewed the affidavit, had determined that there was probable cause and had intended to sign the warrant, but had not done so. Respondent then granted the motion to suppress based on the fact that the warrant was never signed.

Section 1523 of the Penal Code defines a search warrant as "an order in writing, in the name of the people, signed by a magistrate. . . ." Were we writing on a clean slate we might well conclude that an order not signed by a magistrate could not qualify as a search warrant. We are not the first to consider this issue, however. In *Sternberg* v. *Superior Court,* 41 Cal.App.3d 281 [115 Cal.Rptr. 893], the court confronted a situation identical to that before us, except that in *Sternberg* the absence of the magistrate's signature was discovered by the officer shortly after the warrant was executed and it was then brought back to the magistrate who signed it. The warrant in *Sternberg* was held legally sufficient.

The crucial time for testing the sufficiency of the warrant was the time that it was executed. The warrant in *Sternberg* was lacking a signature at that time, as was the warrant in the present case. The subsequent signing of the warrant in *Sternberg* could not alter that fact. To be logically consistent with the ruling in *Sternberg* we would have to find that the absence of the signature on the warrant in the instant case, under the facts set forth above, did not render it legally insufficient.

The significance of the magistrate's having signed the warrant in *Sternberg* after it was executed was merely evidentiary, supporting an inference favorable to the people as to the magistrate's intention at the time the warrant first was presented to him. That function was served in the present case by the magistrate's signature on the affidavit and by her testimony which respondent found to be truthful. The other factors which in *Sternberg* led the court to sustain the validity of the warrant exist in equal measure in the present case.

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The amendment, of course, does not include an express requirement that the magistrate's signature be affixed to the warrant. ■ The primary purpose of the amendment, as has been noted many times, is to require that decisions about the sufficiency and the reliability of evidence used to justify a search be made by a neutral and detached magistrate, rather than by an "officer engaged in the often competitive enterprise of ferreting out crime." (*Johnson* v. *United States*, 333 U.S. 10, 14 [92 L.Ed. 436, 440, 68 S.Ct. 367].) That is precisely what happened in the present case.

A secondary purpose of the amendment and of the California statutes which prescribe the methods for the issuance of search warrants is to apprise the householder that the search has been authorized by a magistrate. ■ Here, as in *Sternberg*, the person on whom the warrant was served did not notice the absence of the magistrate's signature. Thus, the type of confrontation which this secondary purpose is designed to avoid did not occur despite the deficiency in the warrant. Since the officer, both in the present case and in *Sternberg*, was unaware of the defect in the warrant at the time he served it, application of the exclusionary rule would serve no deterrent purpose.

We have set forth in detail above not only the testimony of the magistrate, but that of the officer as well because we are aware that there is a certain potential for mischief inherent in our decision. It is clear, however, that no mischief was practised in the present case. Both the officer and the magistrate acted and testified in total good faith. No useful purpose would therefore be served by suppressing evidence in this case merely because some enterprising officer in some future case might engage in a deliberate effort to circumvent the statutory or constitutional requirements. The time to deal with such a case is when it arises.

Let a peremptory writ of mandate issue directing respondent court to vacate and annul its order of May 26, 1977, granting real party in interest's motion to suppress evidence and to conduct a further hearing on the issues remaining to be resolved in connection with real party's said motion.

Kaus, P. J., and Hastings, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied January 26, 1978. Bird, C. J., was of the opinion that the petition should be granted.